**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| ACACIA WILLIAMS, DREAM DEFENDERS, NEW FLORIDA MAJORITY, ORGANIZE FLORIDA, TERRIAYNA SPILLMAN, RAY WINTERS, KATHLEEN WINTERS, and BIANCA MARIA BAEZ<br><br>     Plaintiffs,<br><br>     v.<br><br>RON DESANTIS, in his official capacity as Governor of the State of Florida, LAUREL M. LEE, in her official capacity as Florida Secretary of State, and FLORIDA ELECTIONS CANVASSING COMMISSION,<br><br>     Defendants. | Case No. _____ |

**COMPLAINT FOR EMERGENCY INJUNCTIVE**
**AND DECLARATORY RELIEF**

**<u>INTRODUCTION</u>**

1.     The global coronavirus pandemic threatens to disrupt the Presidential Preference Primary ("PPP") election in Florida, scheduled for tomorrow, March 17, 2020, and cause large-scale voter disenfranchisement falling hardest on communities of color and other historically vulnerable populations. The President

of the United States and the Governor of Florida have each declared a state of emergency. Florida has reported 149 confirmed cases of COVID-19 and four deaths to date, with every expectation that these numbers will rise. Universities have sent students home, people are remaining in quarantine, poll workers are dropping out, and Supervisors of Elections have closed or moved 112 polling places in 22 counties, in many cases less than a week before the election. The predictable result is the denial of the vote to untold numbers of Floridians who had planned to vote in person on Election Day—including those who are elderly or have health conditions and cannot get to the polls without tremendous risk, university students who are no longer present in their county of registration because their dorms have closed, and those who venture out but encounter long lines and confusion at the polls. And yet the State of Florida ("the State") has failed to take reasonable emergency measures necessary for voter participation in the face of this crisis. Accordingly, injunctive relief ordering the extension of vote-by-mail options and other accommodations at polling places is necessary to protect the fundamental right to vote.

2.     On Friday, March 13, 2020, President Donald Trump declared a national emergency to begin mobilizing the extraordinary measures necessary to address the rapidly expanding public health crisis related to the coronavirus.[1]

3.     Also on March 13, 2020, Secretary of State Laurel M. Lee ("Secretary Lee") released a joint statement with the chief election officials of Arizona, Illinois, and Ohio, confirming that the scheduled PPP election would proceed on Tuesday, March 17, 2020, despite the emergent circumstances.[2]

4.     Since the State's announcement on Friday, March 13, it has refused to make a reasonable effort to accommodate the needs of its voting eligible citizens that are quarantined and voters who need accommodations in order to cast a ballot in the PPP.

5.     Under the circumstances, the State's failure to extend vote-by-mail deadlines, adjust early voting dates, and expand mail ballot transmission options amounts to a denial of critical voter opportunities in violation of the First and Fourteenth Amendments, the Americans with Disabilities Act, and the

---

[1] "Transcript: Trump's Coronavirus News Conference," New York Times (Mar. 13, 2020) (online at www.nytimes.com/2020/03/13/us/politics/trump-coronavirus-news-conference.html).

[2] "Statement from Arizona, Florida, Illinois and Ohio Chief Elections Officials on the Status of the March 17th State Primaries," Ohio Secretary of State (Mar. 13, 2020) (online at www.ohiosos.gov/media-center/press-releases/2020/2020-03-13/).

Rehabilitation Act. Absent relief, hundreds of thousands of eligible Floridians will likely be prevented from participating in the PPP election.

6.      In so doing, the State has ensured that eligible Floridians who would have otherwise voted during this period will be unable to participate in the PPP election. Plaintiffs therefore bring this action to vindicate the voting rights of eligible Floridians disenfranchised by the State's refusal to take reasonable emergency election measures.

## PARTIES

### Plaintiffs

7.      Plaintiff DREAM DEFENDERS is a Florida nonprofit corporation with its principal office in Miami-Dade County, Florida. The organization was established in 2012 following the killing of teenager Trayvon Martin and is directed by Black and Brown Youth. Dream Defenders uses training and organizing of youth and students to confront structural inequality. The organization conducts civic engagement activities across the state of Florida including get out the vote efforts. The membership of Dream Defenders includes college students who have been displaced from their schools due to the coronavirus pandemic. The state's failure to offer appropriate accommodations in the PPP in response to the pandemic is also thwarting the organization's efforts to secure the participation of registered Floridians in the election.

8. Plaintiff NEW FLORIDA MAJORITY, INC. ("NewFM") is a Florida non-profit corporation and membership organization with its principal office in Miami-Dade County, Florida. Founded in 2009, NewFM is dedicated to organizing, educating, and mobilizing disempowered communities in Florida to win equity and fairness throughout the State. NewFM's central focus is to expand democracy by ensuring that every person eligible to vote, regardless of party affiliation, is able to exercise his or her fundamental and constitutionally protected right to vote. To achieve its goal, NewFM works with individual members and organizations across the state of Florida engaged in civic and democratic endeavors to assist underserved communities in voter registration, voter education and get out the vote efforts. The state of emergency caused by coronavirus thwarts the organization's efforts to increase voter participation and impacts its members who are registered voters in the state of Florida.

9. Plaintiff ORGANIZE FLORIDA is a community-based, nonprofit member organization with its principal offices in Orange County, Florida. Its membership consists of low- and moderate-income people dedicated to the principles of social, racial, and economic justice and the promotion of an equal and fair Florida for all. Organize Florida's members bring communities together to join in the fight for safe neighborhoods, healthy families, quality education, good jobs, justice, equality and a more representative democracy. Organize

Florida's major campaigns have included supporting children and families and increasing Latinx voter turnout. The organization is committed to exposing injustice and holding Florida's leaders accountable. The emergency caused by the coronavirus outbreak and the state's failure to take appropriate steps to accommodate impacted voters hinders the organization's efforts to secure voter participation and impacts their members who are registered voters.

10. Plaintiff TERRIAYNA SPILLMAN is a full-time student in her first year at Bethune-Cookman University in Daytona Beach, Volusia County. Her family resides in Leesburg, Lake County. Ms. Spillman complied with a directive from Bethune-Cookman University not to return to campus until March 30, 2020 due to the coronavirus outbreak. Ms. Spillman is currently at her parents' home in Leesburg, Lake County, and does not have reliable transportation back to Daytona Beach. The coronavirus and its displacement of students has disrupted Ms. Spillman's plan to vote in person and she is presently unable to request a vote by mail ballot due to the expired deadline.

11. Plaintiff ACACIA WILLIAMS is a full-time student in her second year at the University of Florida in Gainesville, Alachua County, Florida. Her family resides in Sullivan County, New York. Ms. Williams has complied with a directive from the University of Florida to leave her dorm and not to return to campus until March 30, 2020, due to the coronavirus outbreak. Ms. Williams is

currently at her parents' home in Sullivan County, New York, and is unable to travel back to Gainesville, Florida. The coronavirus and its displacement of students has disrupted Ms. Williams' plan to vote in person and she is presently unable to request a vote by mail ballot due to the expired deadline.

12.    Plaintiff RAY WINTERS is an elderly voter in Miami Dade County who is unable to vote in Florida's PPP on March 17, 2020, without severe risks to his health. Mr. Winters is seventy-eight years old and has heart problems and experiences seizures. Mr. Winters is at a higher risk of severe or even fatal outcomes if he contracts COVID-19.  Before the emergency created by COVID-19, Mr. Winters had planned to vote in person at his regular polling place, but now, the risk to his health of potentially being exposed to the virus is too great. He would vote if he could vote by mail.

13.    Plaintiff KATHLEEN WINTERS is an elderly voter in Miami Dade County who is unable to vote in Florida's PPP on March 17, 2020, without risking her own health and the health of her husband, Plaintiff Ray Winters. Ms. Winters is sixty-seven years old and she lives with her husband, Mr. Winters, who has heart problems and experiences seizures. Ms. Winters and her husband are at a higher risk of severe or even fatal outcomes if they contract COVID-19. Before the emergency created by COVID-19, Ms. Winters had planned to vote in person at her regular polling place, but now, the risk to her health and that of her husband

of potentially being exposed to the virus is too great. She would vote if she could still request a vote-by-mail ballot.

14.     Plaintiff, BIANCA MARIA BAEZ is a voter who just returned to the U.S. from an international trip and, in accordance with public health recommendations, is practicing social distancing and is unable to vote in Florida's PPP on March 17, 2020, without risking her health and that of others in her community. Ms. Baez was planning to vote in-person however due to her recent travel and the risk of being asymptomatic while still having the virus presents an undue risk to herself and members of her community. Ms. Baez would vote by mail if she had the opportunity to do so, and would vote in person if she could do so consistent with the public health advice she is endeavoring to follow.

15.     Defendants' refusal to extend the voter registration deadline will frustrate organizational Plaintiffs' respective missions by interfering with their members' efforts to safely and confidently cast a ballot in the upcoming PPP. Individual Plaintiffs will each be unable to vote at their assigned polling places. Plaintiffs will either have to forego casting a ballot in the election or will have to leave their recommended quarantine and risk exposure to the coronavirus to travel back to their polling place to vote in person.

**Defendants**

16.     Defendant RON DESANTIS is sued in his official capacity as Governor of the State of Florida. Defendant DeSantis is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law. As Governor of Florida, Defendant DeSantis is the state's chief executive officer and is responsible for the administration of all state laws, including those pertaining to elections. Defendant DeSantis is also a member of the Elections Canvassing Commission as established in Florida Statute § 102.111.

17.     Defendant LAUREL M. LEE is sued in her official capacity as Florida Secretary of State. Defendant Lee is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law. Pursuant to Florida Statute § 97.012, the Secretary of State is the chief elections officer of the State and is responsible for the administration of state laws affecting voting.

18.     Defendant ELECTIONS CANVASSING COMMISSION is sued as a state-created entity. Its membership consists of the Governor and two members of the Cabinet selected by the Governor, as set forth in Florida Statute § 102.111. Pursuant to Florida Statute § 101.698, the Elections Canvassing Commission is tasked with adopting emergency rules to facilitate absentee voting during emergency situations.

# **JURISDICTION**

19.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution, and under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

20.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States, because Plaintiffs bring this action to redress the deprivation, under color of State law, of rights, privileges, and immunities secured by the Constitution of the United States and federal law, and because Plaintiffs bring this action to secure equitable relief under federal law providing for the protection of voting rights.

21.     This Court has personal jurisdiction over Defendants, who are sued only in their official capacity as officers of the State of Florida.

22.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Plaintiff Williams resides in Gainesville, Dream Defenders has members in Gainesville, and a substantial part of the events that gave rise to Plaintiffs' claims occurred in this judicial district.

## STATEMENT OF FACTS

23.     On December 1, 2019, the first confirmed COVID-19 patient began experiencing symptoms in China's Hubei province.[3] The novel coronavirus infection rapidly spread to other countries. By January 21, 2020 the Centers for Disease Control and Prevention ("CDC") confirmed the first patient in the United States.[4] It has led to at least 1,629 confirmed U.S. cases in 46 states and the District of Columbia.[5] The number of actual cases is likely far higher because effective testing procedures have only slowly become widely available. Thus far, the outbreak has led to 41 deaths in the United States.[6]

24.     COVID-19 creates a significantly higher risk of serious illness or death for individuals with underlying chronic health conditions, including heart disease, diabetes, and cancer.[7] One study found that, among patients diagnosed

---

[3] Fernando Duarte, "Who Is 'Patient Zero' in the Coronavirus Outbreak," BBC (Feb. 23, 2020) (online at www.bbc.com/future/article/20200221-coronavirus-the-harmful-hunt-for-covid-19s-patient-zero).

[4] Elizabeth Cohen, "First US Case of Wuhan Coronavirus Confirmed by CDC," CNN (Jan. 21, 2020) (online at www.cnn.com/2020/01/21/health/wuhan-coronavirus-first-us-case-cdc-bn/index.html).

[5] "Coronavirus Disease 2019 (COVID-19) in the U.S.," Centers for Disease Control and Prevention (updated Mar. 13, 2020) (online at www.cdc.gov/coronavirus/2019-ncov/cases-in-us.html).

[6] "Coronavirus Disease 2019 (COVID-19) in the U.S.," Centers for Disease Control and Prevention (updated Mar. 13, 2020) (online at www.cdc.gov/coronavirus/2019-ncov/cases-in-us.html).

[7] Roni Caryn Rabin, Coronavirus Threatens Americans With Underlying Conditions, N.Y. Times (Mar. 14, 2020), https://www.nytimes.com/2020/03/12/health/coronavirus-midlife-conditions.html.

with COVID-19, individuals who had one chronic condition were 1.8 times more likely than those without a chronic condition to have a "poor outcome," such as requiring a ventilator or dying.[8] That rate jumped to 2.6 times greater risk for individuals with two chronic conditions.[9] The Centers for Disease Control agrees that "people of any age with underlying health conditions, such as diabetes, lung disease, or heart disease, are at greater risk of severe illness from COVID-19."[10]

25.     On Friday, March 13, 2020, President Trump declared a national emergency to begin mobilizing the extraordinary measures necessary to address the rapidly expanding public health crisis.[11]

26.     The outbreak has reached Florida. As of Sunday, March 15, 2020, the Florida Department of Health has confirmed 136 cases among Floridians,[12] and three Floridians have died.[13] Florida Department of Education Commissioner Richard Corcoran has urged school districts statewide to keep schools closed for

---

[8] *Id.*

[9] *Id.*

[10] Know the facts about coronavirus disease 2019 (COVID-19) and help stop the spread of rumors, Centers for Disease Control (March 12, 2020), https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/share-facts.html.

[11] "Transcript: Trump's Coronavirus News Conference," New York Times (Mar. 13, 2020) (online at www.nytimes.com/2020/03/13/us/politics/trump-coronavirus-news-conference.html).

[12] "2019 Novel Coronavirus (COVID-19)," Florida Department of Health (updated Mar. 15, 2020) (online at www.floridahealth.gov/diseases-and-conditions/COVID-19/).

[13] *Id.*

an additional week of spring break.[14] Tens of thousands of Floridians who work for state agencies have been asked to work from home and to cancel travel for 30 days.[15]

27.     On Friday, March 13, 2020, Secretary Lee released a joint statement with the chief election officials of Arizona, Illinois, and Ohio, confirming that the scheduled PPP election would proceed on Tuesday, March 17, 2020 despite the emergent circumstances.[16]

28.     On Sunday, March 15, 2020, the CDC issued guidance advising against gatherings of 50 people or more for the next eight weeks and multiple states have begun ordering the closure of restaurants and other establishments.[17]

---

[14] "Florida Department of Education Provides Recommendations for Spring Break," Florida Department of Education (Mar. 13, 2020) (online at www.fldoe.org/newsroom/latest-news/florida-department-of-education-provides-recommendations-for-spring-break.stml)

[15] "Gov. DeSantis Orders 2,500 Coronavirus Test Kits, Asks for Limited Mass Gatherings," News4Jax (Mar. 12, 2020) (www.news4jax.com/health/2020/03/12/gov-desantis-we-have-to-increase-our-ability-to-test-for-coronavirus/).

[16] "Statement from Arizona, Florida, Illinois and Ohio Chief Elections Officials on the Status of the March 17th State Primaries," Ohio Secretary of State (Mar. 13, 2020) (online at www.ohiosos.gov/media-center/press-releases/2020/2020-03-13/).

[17] Emma Bowman, "CDC Recommends Against Gatherings Of 50 Or More; States Close Bars and Restaurants," NPR, Mar. 15, 2020, https://www.npr.org/2020/03/15/816245252/cdc-recommends-suspending-gatherings-of-50-or-more-people-for-the-next-8-weeks.

29.     Today, the President's Office issued new guidance for the public to avoid all social groupings of 10 or more.[18]

30.     In response to the COVID-19 outbreak, Florida Supervisors of Elections ("SOEs") have closed, moved or consolidated 112 polling places in 22 counties, including many at assisted living facilities whose residents are at more acute risk than the general population. Numerous poll workers have also withdrawn from participating in the election due to concerns about the pandemic.[19]

31.     In addition to these administrative problems, a multitude of college students across the State of Florida were abruptly directed to leave their dorms and campuses, or to remain away after from campus after leaving for spring break, and to continue classes online.[20] Many of these students returned to their parents' homes and are scattered across the State of Florida, the country, and perhaps the world.

---

[18] Fifteen Days to Slow the Spread, White House (Mar. 16, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf.

[19] *See, e.g.,* Anna Bryson, "Coronavirus Florida: Sarasota County Voting Locations Change as Poll Workers Quit," Herald-Tribune (March 14, 2020) online at https://www.heraldtribune.com/news/20200314/coronavirus-florida-sarasota-county-voting-locations-change-as-poll-workers-quit.

[20] *See, e.g.*, "Miami Dade, Broward Colleges to Cancel All Classes, Transition to Remote Learning," NBC Miami (Mar. 12, 20202) (online at www.nbcmiami.com/news/local/miami-dade-college-closes-medical-campus-after-visitor-tested-positive-for-covid-19/2204781/).

32.     Prior to the pandemic, these students believed they would be able to vote in person on or near campus and now they cannot. They were not prepared to vote by mail and have missed the deadline to request a mail ballot.

33.     Plaintiff Terriayna Spillman is one such student. She is a full-time student in her first year at Bethune-Cookman University (B-CU), located in Daytona Beach, Volusia County. She is a pre-nursing major.

34.     When school is in session—that is, for nine months out of the year— Plaintiff Spillman resides in Daytona Beach, on B-CU's campus.

35.     Spillman is registered to vote in Volusia County, and had planned to vote in person at her polling place in Daytona Beach in the Florida Presidential Preference Primary on Election Day, Tuesday, March 17, 2020.

36.     B-CU's spring break began on Monday, March 9, 2020. Spillman traveled to her parents' home in Leesburg, Florida for spring break, with a plan to return to Daytona Beach on Thursday, March 12, 2020.

37.      During spring break, B-CU directed students "not to return to Campus" until March 30 due to the coronavirus outbreak. In accordance with this directive, Spillman remains in Leesburg, Florida.

38.     Due to the coronavirus outbreak and the safety measures implemented at B-CU, Plaintiff Spillman cannot execute her plan to vote in the Florida Presidential Preference Primary. Even if she were able to take the time to

return to Daytona Beach on Election Day, she does not have a reliable means of getting there because her mother, who would drive her, has been ordered to continue reporting to work throughout the coronavirus outbreak.

39.     Plaintiff Acacia Williams is a full-time student in her second year at the University of Florida (UF), located in Gainesville, Alachua County. She is a Spanish major. When school is in session—that is, for nine months of the year—Williams resides in Gainesville.

40.     Williams is registered to vote in Alachua County, and had a plan to vote early in person in the Florida Presidential Preference Primary on Friday, March 13, 2020.

41.     On or about Monday, March 9, 2020, and on Wednesday, March 11, 2020, UF leadership sent emails advising students that all classes would transition online and they were encouraged to leave campus due to the coronavirus outbreak.

42.     Williams complied, traveling to Tampa on March 13, 2020, then to her parents' home in Sullivan County, New York on March 14, 2020. Williams remains in New York.

43.     Williams was unable to cast a ballot in early voting before leaving Gainesville. Due to the coronavirus outbreak and the safety measures implemented at UF, Williams cannot execute her plan to vote in the Florida Presidential Preference Primary.

44.     Plaintiffs Spillman and Williams are not the only Florida voters who have been affected by the outbreak and who, unless the relief Plaintiffs request is granted, will be unable to participate in the PPP on Tuesday.

45.     Dream Defenders member Eva Robinson is a full-time student in her second year at the University of Florida (UF), located in Gainesville, Alachua County. She is an art major.

46.     When school is in session, Robinson resides in Gainesville, on UF's campus.

47.     Robinson is registered to vote in Alachua County. Robinson had a plan to vote early in the Florida Presidential Preference Primary, before Election Day, Tuesday, March 17, 2020.

48.     On or about Monday, March 9, 2020, and on Wednesday, March 11, 2020, UF leadership sent emails advising students that all classes would transition online and they were encouraged to leave campus due to the coronavirus outbreak. Robinson complied, traveling to her parents' home near Jacksonville, North Carolina on Friday, March 13, 2020. As of today, Robinson remains in North Carolina.

49.     Robinson was unable to cast a ballot in early voting before leaving Gainesville, and it is now too late for her to request a mail ballot.

50.     As a result of the state's failure to provide any accommodation for the disruption caused by the coronavirus outbreak, Robinson and voters like her cannot execute their plans to vote in the Florida Presidential Preference Primary.

51.     In addition to students displaced by emergency measures, Floridians across the state have had their voting plans disrupted as a result of the response to the COVID-19 emergency. Many Floridians, such as Plaintiff Baez, have entered quarantine or are engaging in social distancing to prevent contraction or spread of the virus. Others, such as Plaintiffs Ray and Kathleen Winters, are at elevated risk of serious health consequences should they become infected with COVID-19. These Floridians who planned to vote in person will be unable or unwilling to do so without putting themselves and others at risk.

52.     Dream Defenders annually hosts a phone bank to reach voters around the State of Florida in advance of an election. As a result of the coronavirus, on March 13, 2020, Dream Defenders increased the number of calls that it normally makes to voters, out of concern that polling place changes and other obstacles may prevent them from voting.

53.     During Dream Defenders' calls with community members, the phone bankers have encountered multiple people that initially planned to vote in-person on Election Day but no longer intend to cast a ballot.

54. Several people indicated during the phone bank that they do not plan to leave the house to vote because they are afraid of contracting the virus, and others indicated that they are exhibiting symptoms of being sick and want to be mindful of spreading their sickness to others.

55. Dream Defenders spoke with two individuals who, like Plaintiffs Spillman and Williams, are currently displaced because of the coronavirus from their assigned voting precinct. They will be unable to vote on Election Day because they cannot travel to their assigned polling place.

56. Dream Defenders' phone bankers also encountered numerous people that are unsure of their polling place location for Election Day.

57. Neither the State of Florida nor Supervisors of Elections have issued information to guide people regarding polling place changes, and Dream Defenders has expended hours attempting to research polling place changes on Supervisors of Elections websites.

58. Florida statutes currently provide that in emergency situations when a voter is unable to leave their home, the SOEs may have a ballot delivered to that person or their immediate family member on Election Day.[21]

---

[21] Fla. Stat. §101.62(4)(c)(5).

59. Another Florida statute provides that "[i]f a national or local emergency or other situation arises which makes substantial compliance with the provisions of state or federal law relating to the methods of voting for overseas voters impossible or unreasonable…the Elections Canvassing Commission may adopt by emergency rules such special procedures or requirements necessary to facilitate absentee voting by those persons directly affected who are otherwise eligible to vote in the election."[22]

## CLAIMS FOR RELIEF

### COUNT ONE
**Undue Burden on the Right to Vote in Violation
of the Fourteenth Amendment**

60. Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs.

61. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

62. Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a court considering a challenge to a state election law "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to

---

[22] Fla. Stat. §101.698.

vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

63.     Unless Plaintiffs are granted the relief requested, there is a strong likelihood that the right to vote of thousands of Floridians, including the Individual Plaintiffs and Organizational Plaintiffs' members and constituents, will be severely burdened (if not eliminated entirely) in the 2020 presidential preference primary.

64.     Because of the crisis created by COVID-19, many Floridians, including Plaintiffs Spillman, Baez, Williams, Ray Winters, and Kathleen Winters, are not able or willing to vote in person at the polls on Tuesday as they had planned and have now missed the March 7, 2020, deadline to request vote-by-mail ballots.

65.     These individuals now have no means of casting a ballot except by appearing in person at their Supervisor of Elections office to request an emergency vote-by-mail ballot or appearing and voting in person at their assigned polling place.

66.     For many of these voters, such as Plaintiffs Spillman and Williams, neither of these options are practicable because they are not presently in the counties where they are registered.

67.     For others, such as Plaintiffs Ray and Kathleen Winters, appearing in person at either the Supervisor of Elections office or the polls would subject them to unreasonable health risks because their age or underlying health conditions make them particularly vulnerable to COVID-19.

68.     For still other voters, including Plaintiff Baez, who just returned from overseas travel, appearing in person to request a ballot or vote risks subjecting others to potential infection and would be contrary to the advice of public health officials.

69.     Moreover, even if it were still possible to request a vote-by-mail ballot, these individuals would have no practicable way of receiving and then returning their ballots, because Defendants' rules permit delivery and return of vote-by-mail ballots only by mail for domestic non-military voters.

70.     Organizational Plaintiffs Dream Defenders, New Florida Majority, and Organize Florida all have members who are similarly situated to these individual Plaintiffs.

71.     Because the Defendants have failed and refused to extend the vote-by-mail request and return deadlines or expand the means by which individuals

may receive and return vote-by-mail ballots, Plaintiffs will be entirely deprived of the opportunity to vote in the presidential preference primary, in violation of their rights under the First and Fourteenth Amendments.

72. Under these circumstances, the State's enforcement of the March 7 vote-by-mail request deadline and its refusal to allow the delivery of ballots by e-mail or fax or accommodate voters who are particularly vulnerable to COVID-19 constitute an undue burden on the right to vote.

73. Defendants cannot provide any colorable justification for their refusal, in light of the COVID-19 crisis, to extend the vote-by-mail request and return deadlines or to expand the mechanisms for delivering vote-by-mail ballots.

**COUNT TWO**
**Failure to Provide Reasonable Accommodations in Violation of**
**Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131, *et seq.*)**

74. Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs.

75. Under Title II of the Americans with Disabilities Act, state and local governments must not impose requirements on participation in public services, programs, or activities, including voting, that screen out individuals with disabilities from fully and equally enjoying those programs and must make reasonable modifications in policies, practices, or procedures, including voting

and election procedures, when the modifications are necessary to avoid discrimination on the basis of disability.

76. Individuals who suffer a significant medical vulnerability that places them at extremely high risk of serious bodily injury or death should they leave the confines of their homes—including Plaintiff Ray Winters whose heart condition puts him at significant risk of severe illness or death should he contract COVID-19—have a disability within the meaning of the ADA.

77. Defendants' failure and refusal to extend the deadlines and mechanisms for requesting and returning a vote-by-mail ballot constitute a failure to make a reasonable accommodation for those, such as Plaintiff Ray Winters, whose health and age limit their ability to have contact with others in this time of public health emergency created by COVID-19 and further constitutes a condition on access to the ballot box that has the effect of screening out such individuals from participating in the PPP, in violation of Title II of the Americans with Disabilities Act.

## COUNT THREE
### Failure to Provide Reasonable Accommodations in Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794)

78. Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs.

79.     Under Section 504 of the Rehabilitation Act, federally funded programs, including state and local programs related to elections and voting, must not discriminate against individuals with disabilities and must make reasonable accommodations to allow individuals with disabilities to access the federal funded program, activity, or service.

80.     Voters such as Plaintiff Ray Winters, who suffer from health conditions that put them at significant risk of bodily injury or death should they leave the confines of their homes, have a disability within the meaning of the Rehabilitation Act.

81.     Defendants' failure and refusal to extend the deadlines and mechanisms for requesting and returning a vote-by-mail ballot constitute a failure to make a reasonable accommodation for those, such as Plaintiff Ray Winters, whose health and age limit their ability to have contact with others in this time of public health emergency created by COVID-19 and further constitutes a condition on access to the ballot box that has the effect of screening out such individuals from participating in the PPP, in violation of Section 504 of the Rehabilitation Act.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court enter judgment:

A.      Preliminarily and permanently enjoining Defendants from enforcing the current deadlines and requirements for vote-by-mail ballots, and mandating safe and sanitary voting procedures for all voters who wish to participate in the Presidential Preference Primary on March 17, 2020.

B.      Ordering Defendants to extend the deadline for people to request a vote-by-mail ballot from 10 days before the election to March 24, 2020.

C.      Ordering Defendants to allow people to request that their ballot be sent to them via e-mail or fax as well as mail.

D.      Ordering Defendants to adjust the deadline for people to return their vote-by-mail ballot, counting them as long as they are postmarked by March 24, 2020, and are received by March 27, 2020, consistent with the accommodation already made for military and overseas voters.

E.      Ordering Defendants to allow people utilizing vote-by-mail to submit their ballots at a variety of drop boxes, including drop boxes at polling sites that are not their precincts.

F.      Ordering Defendants to allow a third-party individual to collect ballots from those utilizing vote-by-mail and drop off these ballots at the drop

boxes mentioned above. There should not be a limit on the number of ballots that a person is able to collect and drop off through the extended balloting period.

G.     Ordering Defendants to permit voters to vote curbside with a paper ballot.

H.     Ordering Defendants to give poll workers discretion to permit voters from vulnerable populations (senior citizens, voters who are immunocompromised, etc.) to move to the front of the line of waiting voters.

I.     Ordering Defendants to assign line-walkers to make sure voters are in their correct polling location, have required identification, and articulate any needs for assistance so that everyone may check in and move through the polling place efficiently.

J.     Ordering Defendants to revise the layout of polling places to ensure that stations and individuals are six feet apart, while maintaining as paramount voter privacy when marking ballots.

K.     Ordering Defendants to train and instruct poll workers to sanitize all appropriate surfaces within the polling place multiple times regularly throughout Election Day.

L. Ordering Defendants to ensure that, beyond the recommendations above, SOEs are aware of and following the CDC's recommendations for polling place health and safety during the COVID-19 outbreak.[23]

M. Ordering Defendants to instruct SOEs to contact all voters whose polling places have changed as a result of site relocations. Supervisors should also attempt to station a poll worker at each of the old voting sites to alert voters that the polling place has changed.

N. Ordering Defendants to instruct SOEs to update their county websites to specifically flag polling places that have changed as a result of site relocations.

O. Ordering Defendants to develop public service announcements and transmit them via print, radio, and social media to alert Floridians to the expanded opportunities to vote.

P. Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to, inter alia, 42 U.S.C. 1983 and other applicable laws; and

Q. Granting such other relief as the Court deems just and proper.

---

[23] "Recommendations for Election Polling Locations," Centers for Disease Control (Mar. 10, 2020) (www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html).

Dated: March 16, 2020

Respectfully submitted,

By: */s/ Kira Romero-Craft*
      Kira Romero-Craft

CHIRAAG BAINS*
Dēmos
740 6th Street NW, 2nd Floor
Washington, DC 20001
(202) 864-2746
cbains@demos.org

STUART NAIFEH*
KATHRYN C. SADASIVAN*
MIRANDO GALINDO*
EMERSON GORDON-MARVIN*
Dēmos
80 Broad St, 4th Floor
New York, NY 10004
(212) 485-6055
snaifeh@demos.org
ksadasivan@demos.org
mgalindo@demos.org
egordonmarvin@demos.org

JUDITH A. BROWNE DIANIS*
GILDA DANIELS*
JESS UNGER*
Advancement project national office
1220 L Street N.W., Suite 850
Washington, D.C. 20005
(202) 728-9557
jbrowne@advancementproject.org
gdaniels@advancementproject.org
junger@advancementproject.org

KIRA ROMERO-CRAFT
(FL SBN 49927)
LatinoJustice PRLDEF
523 West Colonial Drive
Orlando, Florida 32804
(321) 418-6354
kromero@latinojustice.org

FRANCISCA FAJANA*
JACKSON CHIN*
LatinoJustice PRLDEF
475 Riverside Drive
Suite 1901
New York, NY 10115
ffajana@latinojustice.org
jchin@latinojustice.org

*Attorneys for Plaintiffs*

*\*Application for admission pro hac vice
forthcoming*