## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

### GAINESVILLE DIVISION

| | |
|---|---|
| ACACIA WILLIAMS, DREAM DEFENDERS, NEW FLORIDA MAJORITY, ORGANIZE FLORIDA, TERRIAYNA SPILLMAN, RAY WINTERS, KATHLEEN WINTERS, and BIANCA MARIA BAEZ | Case No. 1:20-cv-67-RH- GRJ |
| Plaintiffs, | |
| v. | |
| RON DESANTIS, in his official capacity as Governor of the State of Florida, LAUREL M. LEE, in her official capacity as Florida Secretary of State, and FLORIDA ELECTIONS CANVASSING COMMISSION, | |
| Defendants. | |

### PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65(a) and (b), and for the reasons set forth in the complaint and memorandum submitted herewith, Plaintiffs respectfully move the Court for a temporary restraining order and a preliminary injunction enjoining Defendants DeSantis, Lee, and the Florida Elections Canvassing Commission, to take whatever steps are necessary to implement the

1

following measures on a statewide basis and to direct all County Supervisors of Elections (SOEs) to undertake the following *emergency* measures to ensure free, fair, and accessible voting for all Floridians impacted by the coronavirus pandemic:

(1) Extend deadlines for requesting and returning vote-by-mail ballots.

    a. Extend the deadline to request a vote-by-mail ballot from 10 days before the election to March 24, 2020. Although this deadline is after Election Day, it is before the date through which counties will be counting military and overseas voters' ballots (March 27), and such an extension is necessary to make access to vote-by-mail under these emergency circumstances meaningful.

    b. Accept returned vote-by-mail ballots and count them as long as they are postmarked by March 24, 2020, or later and are received by March 27, 2020, the existing deadline for receipt of ballots cast by military and overseas voters.

(2) Expand vote-by-mail options.

    a. Waive the requirement that any individual complete an Election Day Vote-by-Mail Ballot Delivery Affidavit as a condition of obtaining a vote-by-mail ballot. The present state of emergency establishes every voter's eligibility to obtain their vote-by-mail ballot on or after Election Day.

b.  Allow all voters to request that their ballot be sent to them via e-mail or fax, an option currently available only to military and overseas voters.

c.  Provide drop-boxes for the return of vote-by-mail ballots at polling sites, and accept ballots returned via drop-boxes regardless of which precinct they are returned to.

d.  Allow voters to designate other individuals to return their ballots in person, by mail, or via drop-boxes, and waive the current limit of two ballots per designee. Currently, designees may collect and return ballots only for two voters other than themselves and may only return them in person or by mail.

(3)  Make polling locations healthy, safe, and accessible for all voters.

a.  Permit voters to vote curbside with a paper ballot.

(4)  Communicate critical information to Florida voters.

a.  Require County Supervisors of Elections to contact all voters whose polling places have changed as a result of site relocations, to post such notices in prominent public areas, such as entrances and exits of the closed voting sites, and to station a poll worker at each of these sites to alert voters that the polling place has changed.

b. Require County Supervisors of Elections update their county websites to specifically flag polling places that have changed as a result of site relocations.

c. Develop state-wide public service announcements to be transmitted via print, radio, and social media to alert Floridians to the expanded opportunities to vote.

As set forth in detail in the Plaintiffs' Memorandum of Law in Support of this Motion for a Temporary Restraining Order and Preliminary Injunction and the accompanying Declarations of Acacia Williams, Terriayna Spillman, Eva Robinson, Ray Winters, Kathleen Winters, Bianca Maria Baez, and Rachel Gilmore on behalf of Dream Defenders, filed herewith, Plaintiffs have established that they are likely to succeed on the merits of their claims; that they will and other Florida voters will suffer irreparable harm if the Court does not issue the requested injunction; that the harm to Plaintiffs and voters outweighs any harm Defendants would suffer if the Court were to order the emergency preliminary relief sought by Plaintiffs; that the balance of hardships tips strongly in Plaintiffs' favor; and that a temporary restraining order and preliminary injunction in this case advances the clear public interest. Accordingly, a Temporary Restraining Order should issue forthwith.

Plaintiffs respectfully request that this matter be set for telephonic oral argument on an expedited basis.

4

Dated: March 16, 2020                  Respectfully submitted,

                                       By:   */s/ Kira Romero-Craft*

                                             Kira Romero-Craft


CHIRAAG BAINS*                    JUDITH A. BROWNE DIANIS*
Dēmos                            GILDA DANIELS*
740 6th Street NW, 2nd Floor     JESS UNGER*
Washington, DC 20001             SHARION SCOTT*
(202) 864-2746                   Advancement Project National Office
cbains@demos.org                 1220 L Street N.W., Suite 850
                                 Washington, D.C. 20005
STUART NAIFEH*                   (202) 728-9557
KATHRYN C. SADASIVAN*            jbrowne@advancementproject.org
MIRANDO GALINDO*                 gdaniels@advancementproject.org
EMERSON GORDON-MARVIN*           junger@advancementproject.org
Dēmos                            sscott@advancementproject.org
80 Broad St, 4th Floor
New York, NY 10004               KIRA ROMERO-CRAFT
(212) 485-6055                   (FL SBN 49927)
snaifeh@demos.org                LatinoJustice PRLDEF
ksadasivan@demos.org             523 West Colonial Drive
mgalindo@demos.org               Orlando, Florida 32804
egordonmarvin@demos.org          (321) 418-6354
                                 kromero@latinojustice.org

                                 FRANCISCA FAJANA*
                                 JACKSON CHIN*
                                 LatinoJustice PRLDEF
                                 475 Riverside Drive, Suite 1901
                                 New York, NY 10115
                                 (212) 739-7572
                                 ffajana@latinojustice.org
                                 jchin@latinojustice.org

                                 *Attorneys for Plaintiffs*

                                 *Application for admission pro hac vice
                                 forthcoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

### GAINESVILLE DIVISION

DREAM DEFENDERS, NEW
FLORIDA MAJORITY, ORGANIZE
FLORIDA, TERRIAYNA
SPILLMAN, ACACIA WILLIAMS,
RAY WINTERS, KATHLEEN
WINTERS, and BIANCA MARIA
BAEZ

      Plaintiffs,

        v.

RON DESANTIS, in his official
capacity as Governor of the State of
Florida, LAUREL M. LEE, in her
official capacity as Florida Secretary of
State, and FLORIDA ELECTIONS
CANVASSING COMMISSION,

      Defendants.

Case No. 1:20-cv-67-RH- GRJ

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
### OF MOTION FOR A TEMPORARY RESTRAINING
### ORDER AND PRELIMINARY INJUNCTION

The United States is in the midst of an emergency that threatens not just our

individual health and well-being, but also the health of the most vulnerable members

of our families and communities. No American should be faced with the impossible

choice of having a voice at this critical moment in our democracy and putting

1

themself, their family, or their community at grave risk. No American should be denied the ability to cast a ballot because polling places cannot cope with long lines and confusion occasioned by the closure of polling sites and the failure to extend vote-by-mail options. It is crucial that every eligible voter be able to access the ballot in Florida's presidential preference primary.

The State of Florida, in this time of emergency, has failed and refused to extend the vote-by-mail request and return deadlines or to expand the means by which individuals may receive and return vote-by-mail ballots. As a result, without emergency relief ordered by this Court, Plaintiffs will be entirely deprived of the opportunity to vote in the Presidential Preference Primary, in violation of their rights under the First and Fourteenth Amendments to the United States Constitution.

## FACTUAL BACKGROUND

### I.  The Parties

#### A. Plaintiffs

Individual Plaintiffs are Florida voters whose voting plans have been disrupted by the COVID-19 outbreak and organizations whose members include such individuals.  These voters will therefore be unable to vote in the Presidential Preference Primary ("PPP") on Tuesday, March 17, 2020, if the relief sought in this motion is not granted.

Plaintiff Acacia Williams is a student at the University of Florida in Gainesville, Alachua County, Florida. Her family resides in Sullivan County, New York. Ms. Williams complied with a directive from the University of Florida to leave her dorm and not to return to campus until March 30, 2020, due to the coronavirus outbreak. Ms. Williams is currently at her parents' home in Sullivan County, New York, and is unable to travel back to Florida. The coronavirus and its displacement of students has disrupted Ms. Williams' plan to vote in person and she is presently unable to request a vote by mail ballot due to the expired deadline. She would vote if she could request a vote-by-mail ballot.

Plaintiff Terriayna Spillman is a student at Bethune-Cookman University in Daytona Beach, Volusia County. She complied with a directive from the university not to return to campus until March 30, 2020 due to the coronavirus outbreak. Ms. Spillman is currently at her parents' home in Lake County and does not have reliable transportation back to Daytona Beach. The coronavirus has disrupted Ms. Spillman's plan to vote in person and she is presently unable to request a vote by mail ballot due to the expired deadline. She would vote if she could request a vote-by-mail ballot.

Plaintiff Ray Winters is an elderly voter in Miami Dade County who is unable to vote in Florida's PPP on March 17, 2020, without severe risks to his health. Mr. Winters is seventy-eight years old and has heart problems and experiences seizures.

Mr. Winters had planned to vote in person at his regular polling place, but now, the risk to his health of potentially being exposed to the virus is too great. He would vote if he could request a vote-by-mail ballot.

Plaintiff Kathleen Winters is an elderly voter in Miami Dade County who is unable to vote in Florida's PPP on March 17, 2020, without risking her own health and the health of her husband, Plaintiff Ray Winters. Ms. Winters is sixty-seven years old, and she and her husband are at a higher risk of severe or fatal outcomes from COVID-19. Before the emergency created by COVID-19, Ms. Winters had planned to vote in person at her regular polling place, but now, the risk to her health and that of her husband is too great to go to the ballot box. She would vote if she could request a vote-by-mail ballot.

Plaintiff Bianca Maria Baez is a voter who just returned to the U.S. from an international trip and, in accordance with public health recommendations, is practicing social distancing. She is unable to vote in Florida's PPP on March 17, 2020, without risking her health and that of others in her community. Ms. Baez was planning to vote in-person however due to her recent travel and the risk of being asymptomatic while still having the virus presents an undue risk to herself and members of her community. Ms. Baez would vote-by-mail if she had the opportunity to do so.

Organizational plaintiffs are non-profit organizations whose missions and or members interfered with or affected by Defendants' refusal to extend the voter registration deadline.

Plaintiff New Florida Majority, Inc. ("NewFM") is a Florida non-profit corporation and membership organization that works with individual members and organizations across the State of Florida engaged in civic and democratic endeavors to assist underserved communities in voter registration, voter education and get out the vote efforts. Defendants' failure to extend vote-by-mail and other accommodations during the state of emergency caused by COVID-19 thwarts the organization's efforts to increase voter participation and will prevent many of its members who are registered voters in the State of Florida from voting.

Plaintiff Dream Defenders is a Florida nonprofit corporation. Dream Defenders trains and organizes youth and students to confront structural inequality specifically through civic engagement activities across the State of Florida and get out the vote efforts. The membership of Dream Defenders includes college students who have been displaced from their schools due to the coronavirus pandemic. The State's failure to offer appropriate accommodations in the PPP in response to the pandemic continues to thwart the organization's efforts to secure the participation of registered Floridians in the election and will prevent many of its members who are registered voters in the State of Florida from voting.

Plaintiff Organize Florida is a community-based, nonprofit member organization whose membership consists of low- and moderate-income people dedicated to the principles of social, racial, and economic justice and the promotion of an equal and fair Florida for all. Organize Florida's major campaigns have included supporting children and families and increasing Latinx voter turnout. Defendants' failure to extend vote-by-mail and other accommodations during the emergency caused by the coronavirus outbreak and the State's failure to take appropriate steps to accommodate impacted voters hinders the organization's efforts to secure voter participation and will prevent many of its members who are registered voters in the State of Florida from voting.

B. Defendants

Defendants are Florida election officials, sued in their official capacity for their failure to take action necessary to prevent the unconstitutional deprivation of Plaintiffs right to vote. Defendant Ron DeSantis is sued in his official capacity as Governor of the State of Florida. As Governor of Florida, Defendant DeSantis is the State's chief executive officer and is responsible for the administration of all state laws, including those pertaining to elections. Defendant DeSantis is also a member of the Elections Canvassing Commission as established in Florida Statute § 102.111.

Defendant Laurel M. Lee is sued in her official capacity as Florida Secretary of State. Pursuant to Florida Statute § 97.012, the Secretary of State is the chief elections officer of the State and is responsible for the administration of state laws affecting voting.

Defendant Elections Canvassing Commission is sued as a state-created entity. Its membership consists of the Governor and two members of the Cabinet selected by the Governor, as set forth in Florida Statute § 102.111. Pursuant to Florida Statute § 101.698, the Elections Canvassing Commission is tasked with adopting emergency rules to facilitate absentee voting during emergency situations.

## II.    The Coronavirus (COVID-19) Pandemic

On December 1, 2019, the first confirmed COVID-19 patient began experiencing symptoms in China's Hubei province. Fernando Duarte, *Who Is 'Patient Zero' in the Coronavirus Outbreak*, BBC, Feb. 23, 2020, www.bbc.com/future/article/20200221-coronavirus-the-harmful-hunt-for-covid-19s-patient-zero. The novel coronavirus infection rapidly spread to other countries. By January 21, the Centers for Disease Control and Prevention (CDC) confirmed the first patient in the United States. Elizabeth Cohen, *First US Case of Wuhan Coronavirus Confirmed by CDC*, CNN, Jan. 21, 2020, www.cnn.com/2020/01/21/health/wuhan-coronavirus-first-us-case-cdc-bn/index.html. There are now at least 1,629 confirmed COVID-19 cases in 46 U.S.

states and the District of Columbia. Coronavirus Disease 2019 (COVID-19) in the U.S., Ctrs. for Disease Control & Prevention (updated Mar. 13, 2020), www.cdc.gov/coronavirus/2019-ncov/cases-in-us.html. The number of actual cases is likely far higher because effective testing procedures have only slowly become widely available. Thus far, the outbreak has led to 41 deaths in the United States. Coronavirus Disease 2019 (COVID-19) in the U.S., Ctrs. for Disease Control & Prevention, Mar. 13, 2020, www.cdc.gov/coronavirus/2019-ncov/cases-in-us.html. On Friday, March 13, President Trump declared a national emergency to begin mobilizing the extraordinary measures necessary to address the rapidly expanding public health crisis. *Transcript: Trump's Coronavirus News Conference*, N. Y. Times, Mar. 13, 2020, www.nytimes.com/2020/03/13/us/politics/trump-coronavirus-news-conference.html.

The outbreak has reached Florida. As of today, the Florida Department of Health has confirmed 149 cases among Floridians, including four deaths. 2019 Novel Coronavirus (COVID-19), Fla. Dep't of Health, Mar. 15, 2020, www.floridahealth.gov/diseases-and-conditions/COVID-19/. The true number may well be much higher. Florida Department of Education Commissioner Richard Corcoran has urged school districts statewide to keep schools closed for an additional week of spring break. *Florida Department of Education Provides Recommendations for Spring Break*, Fla. Dep't of Ed., Mar. 13, 2020,

www.fldoe.org/newsroom/latest-news/florida-department-of-education-provides-recommendations-for-spring-break.stml. Tens of thousands of Floridians who work for state agencies have been asked to work from home and to cancel travel for 30 days. Gov. DeSantis Orders 2,500 Coronavirus Test Kits, Asks for Limited Mass Gatherings, News4Jax, Mar. 12, 2020, www.news4jax.com/health/2020/03/12/gov-desantis-we-have-to-increase-our-ability-to-test-for-coronavirus/. On Friday, March 13, Secretary Lee released a joint statement with the chief election officials of Arizona, Illinois, and Ohio, confirming that the scheduled presidential preference primary election would proceed on Tuesday, March 17, despite the emergent circumstances. Statement from Arizona, Florida, Illinois and Ohio Chief Elections Officials on the Status of the March 17th State Primaries, Ohio Sec'y of State, Mar. 13, 2020, www.ohiosos.gov/media-center/press-releases/2020/2020-03-13/. And just yesterday, the CDC recommended that for the next eight weeks, groups and individuals throughout the United States cancel or postpone in-person events that consist of 50 people or more. Interim Guidance for Coronavirus Disease 2019 (COVID-19), Ctrs. for Disease Control & Prevention, Mar. 15, 2020, www.cdc.gov/coronavirus/2019-ncov/cases-in-us.html. Today, the President's Office issued new guidance for the public to avoid all social groupings of *10 or more* people. The President's Coronavirus Guidelines for America, Mar. 16, 2020,

9

https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf.

The ongoing COVID-19 emergency has disrupted the normal functioning of this election.

SOEs have closed, moved or consolidated 112 polling places in 22 counties, including many at assisted living facilities. The closure of polling places at assisted living facilities not only affects residents of the facilities but also the non-residents who vote at those locations. Numerous poll workers may withdraw from participating in this election due to concerns about the pandemic and following the CDC's guidance regarding gatherings of 50 people or more. *See, e.g.,* Anna Bryson, Coronavirus Florida: Sarasota County Voting Locations Change as Poll Workers Quit, Herald-Tribune, Mar. 14, 2020, https://www.heraldtribune.com/news/20200314/coronavirus-florida-sarasota-county-voting-locations-change-as-poll-workers-quit. With a lack of poll workers, SOEs may close or consolidate yet more polling places.  This will inevitably hinder voters' ability to access polling sites within reasonable distances of their homes and will create confusion. Polling places that remain open with fewer poll workers may experience longer lines with wait times for voters, increasing health risks. Where SOEs utilize volunteers from other government departments to fill vacant poll worker positions, the lack of time to fully train those volunteers in election law,

rules, and procedures may result in the dissemination of inaccurate information to voters or to eligible voters being wrongfully turned away from the polls. Between people who can no longer risk going to the polls and those who will face barriers at the polls due to closures, confusion, and long lines, the extension of vote-by-mail deadlines and related accommodations are necessary to protect voting rights in Florida.

## LEGAL STANDARD

Plaintiffs seek a Temporary Restraining Order ("TRO") and a Preliminary Injunction ("PI") pursuant to Federal Rule of Civil Procedure 65 (a) and (b),  to enjoin defendants to ensure that all eligible Florida electors whether they be mandatorily quarantined, self-quarantined, self-distancing, displaced by the pandemic or otherwise prevented from casting a regular ballot on election day by the novel corona virus, COVID-19, and who desire to vote in the primary preference primary election in Florida are able to cast a ballot that counts.

To prevail on a motion for a TRO and PI, a movant must establish: (1) a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable injury in the absence of the requested injunctive relief; (3) that the threatened harm outweighs the harm that the nonmovant would suffer if the injunctive relief is issued; and (4) that the injunctive relief would not be adverse to

the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (setting out the standard for a preliminary injunction); *Windsor v. United States*, No. 09-13998, 2010 WL 1999138, at *4 (11th Cir. May 10, 2010) (noting that the standard for a temporary restraining order is identical to the standard for a preliminary injunction). "The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United States v. Alabama*, 791 F.2d 1450, 1459 (11th Cir. 1986) (affirming grant of a preliminary injunction).

## ARGUMENT

### I.   Plaintiffs Are Likely to Succeed on the Merits of Their Claims.

Plaintiffs are likely to succeed on the merits of their claim that Florida's elections rules, without accommodations for extended vote-by-mail and other vital changes to ensure ballot access in the  midst of the COVID-19 pandemic, places an undue burden on their right to vote by severely burdening and in some cases totally denying hundreds of thousands of eligible Florida citizens the opportunity to cast a ballot that counts in the 2020 presidential preference primary.

Voting forms "the beating heart of democracy."  *League of Women Voters v. Detzner*, 314 F. Supp. 3d 1205, 1215 (N.D. Fla. 2018). But "voting alone is not enough to keep democracy's heart beating. . . [V]otes must then be counted." *Democratic Executive Comm. of Fla. V. Lee*, 915 F.3d 1312, 1315 (11th Cir. 2019).

In the Eleventh Circuit, a court must evaluate the constitutionality of an election law challenged under the First and Fourteenth Amendments by applying the Anderson-Burdick test. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). That test requires the court to weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens imposed by the rule, taking into consideration the extent to which those justifications require the burden to plaintiffs' rights. *See Anderson*, 460 U.S. at 789; *Burdick*, 504 U.S. at 434.

A law that severely burdens the right to vote must be narrowly drawn to serve a compelling state interest. *Burdick*, 504 U.S. at 434; *Democratic Executive Committee of Fla.*, 915 F.3d at 1318. Even for a law that "imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden." *Democratic Executive Committee of Fla.*, 915 F.3d at 1318-19 (citing *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009)). The more a challenged law burdens the right to vote, the stricter the scrutiny to which the law is subjected. *Democratic Executive Committee of Fla.*, 915 F.3d at 1319 (citing *Stein v. Ala. Sec. of State*, 774 F.3d 689, 694 (11th Cir. 2014) (stating that challenges to state election laws arising solely under the First Amendment are governed by *Anderson v. Celebrezze*)).

13

In *Florida Democratic Party v. Scott*, this court explained, in the context of Hurricane Matthew forcing voters to evacuate the State, that there is no Florida statutory provision allowing for an extension of the voter registration deadline in the event of an emergency, and that without such a provision, Florida law "completely disenfranchises thousands of voters, and amounts to a severe burden on the right to vote." 215 F. Supp. 3d. 1250, 1257 (N.D. Fla. 2016).

COVID-19 has placed a severe burden on the right to vote by disenfranchising thousands of voters. Despite Defendant DeSantis's own declaration of a state of emergency on Friday, March 13th, the State has refused to make a reasonable effort to accommodate the needs of its voting eligible citizens that are quarantined and voters who need accommodations in order to cast a ballot in light of the global pandemic and its risks.  Absent relief, hundreds of thousands of eligible Floridians will be prevented from participating in the presidential preference primary election. The burden this scheme places on thousands of Floridians right to vote greatly outweighs any proffered justifications the State could put forward, whether under a more stringent *Anderson-Burdick* analysis akin to strict scrutiny or under the intermediate standard. And as this court explained in *Florida Democratic Party v. Scott*, even assuming the State of Florida could point to a valid compelling interest, "it is nonsensical to argue that it is narrowly tailored to that interest" in a

14

circumstance where the scheme totally denies eligible voters the opportunity to cast a ballot as a result of an un expected state emergency. 215 F. Supp. 3d at 1257.

Similarly, under the *Anderson-Burdick* standard, the State cannot argue that some limitation requires it to burden the constitutional rights of aspiring eligible voters in these circumstances. Nor would the State, given the declared state of emergency and the potential burden to the state health system, want all eligible registered voters to show up in person from around the United States, including asymptomatic individuals who are self-quarantining or practicing social distancing, to come to the polls to cast a ballot. Finally, even under rational basis review, it "is wholly irrational in this instance for Florida to refuse to extend the voter registration deadline when the State already allows the Governor to suspend or move the election date due to an unforeseen emergency." *Scott*, 215 F. Supp. 3d at 1257 (citing § 101.733, Fla. Stat.)

Under these circumstances, the State's enforcement of the March 7 vote-by-mail request deadline and its refusal to allow the delivery of ballots by e-mail or fax or accommodate voters who are particularly vulnerable to COVID-19 constitute an undue burden on the right to vote.  As a result, Plaintiffs are likely to succeed on the merits.

## II.     In the Absence of a Restraining Order, Plaintiffs Will Suffer Irreparable Harm by Being Permanently Denied the Right to Vote in Florida's 2020 Presidential Preference Primary Election.

It is plain that Plaintiffs will suffer irreparable injury if a temporary restraining order is not granted. The State has refused to extend vote-by-mail deadlines, adjust early voting dates, and expand mail ballot transmission options despite a pandemic that has forced many Floridians to leave the State, quarantine at home, or avoid public gatherings—all interrupting ordinary plans to vote in person on Election Day. Plaintiffs and voters across Florida now face an unenviable choice: brave the polls and subject themselves to risks the State itself has asked them not to take, or forfeit their right to vote. Unless they are granted the relief requested, there is a strong likelihood that the right to vote of thousands of Floridians, including the Individual Plaintiffs and Organizational Plaintiffs' members and constituents, will be severely burdened or eliminated in the 2020 presidential preference primary.

Because of the crisis created by COVID-19, many Floridians who planned to vote in person on Election Day, including the individuals who have submitted the attached declarations, are not able or willing to vote in person at the polls on Tuesday as they had planned and have now missed the March 7, 2020, deadline to requested vote-by-mail ballots.  Moreover, the President has instructed all persons to avoid gatherings of 10 persons or more, an instruction many voters would have to disregard to cast their ballots at the polls.

16

These individuals now have no means of casting a ballot except by appearing in person at their Supervisor of Elections office to request an emergency vote-by-mail ballot or appearing and voting in person at their assigned polling place.

For many of these voters—such as Ms. Robinson, who went to her parents' home in North Carolina after the University of Florida asked students to leave campus, and Ms. Williams, who went to her parents' home in New York under the same circumstances—neither of these options is practicable because they are not presently in the State. Ms. Spillman is now at her parents' home in Lake County rather than in Volusia County, where she attends Bethune-Cookman University and where she is registered to vote, because the university directed students not to return. She lacks transportation to get back to Volusia County because her mother, who would have to drive her, has been ordered to continue to report to work.

In addition, the health risks of voting in person are prohibitive for many voters. Plaintiff Ray Winters is 78 years old, has heart problems, and experiences seizures. His wife, Plaintiff Kathleen Winters, is 67 years old and must take precautions to safeguard Mr. Winters' health as well as her own. Both intended to vote in person on Election Day, but with the rapidly evolving news about coronavirus, are now unable to go into the polls without grave risk to their health. They avoid leaving their home and have even made arrangements to have their groceries and medication delivered. Meanwhile, Plaintiff Baez is unwilling to risk

17

her health or that of others as she recently returned from international travel. Untold numbers of Floridians who are ill or have health conditions, who live with people who do, or who are simply committed to social distancing of the sort the country's highest government officials have implored all to undertake will be barred from voting unless they can receive, execute, and return vote-by-mail ballots.

This is not a case where denial of relief would merely inconvenience Plaintiffs, declarants, and organizational plaintiffs' members. Denial of relief would leave people to risk their health, and the health of the wider community, or to forfeit their fundamental right to vote and have a voice in their own democracy.

## III.   The Harm to Plaintiffs Outweighs Any Burden to the State in Accommodating the Situation Caused By the COVID-19 Pandemic.

If Florida does not provide the requested relief, Plaintiffs and thousands of Florida voters will be stripped of their most fundamental freedom—the right to vote. Because any burden on Defendants certainly outweighs the public health and civic consequences of not taking prompt action, the balance of hardships favors Plaintiffs.

As this Court said in another state emergency "[o]f course, the State of Florida has the ability to set its own deadlines and has an interest in maintaining those deadlines … [b]ut it would be nonsensical to prioritize those deadlines over the right to vote, especially given the circumstances here." *Scott*, 215 F. Supp. 3d at 1258. In that case, this court was referring to Hurricane Matthew, which ravaged Florida and left many Florida residents evacuated outside of the state. Here, the COVID-19

emergency is impacting not just the State of Florida, but the United States, and the numbers affected in Florida are expected to rise, perhaps dramatically. America's chief public health department has issued guidance urging individuals and groups to cancel or postpone in-person events that consist of 50 people or more throughout the United States for the next eight weeks. State governments have required persons showing symptoms of COVID-19 not leave their homes for 14 days. The State of Florida has issued a state of emergency, as has the United States. The President's Office just advised that people not gather in groups of *ten or more*. There is no question that under these extraordinary circumstances it is both prudent and necessary for the State to undertake swift action to ensure that the thousands of affected Florida residents do not have to choose between their health or the health of their loved ones and exercising a voice in our democracy.

Any burden the state might experience in having to extend the mail-ballot deadline or take the other actions Plaintiffs seek is limited. Even if government guidance on public gatherings changes, the extension that Plaintiffs request will be sufficient to allow voters to request and return ballots by mail or via the drop boxes Plaintiffs seek, providing a full opportunity to participate even for those with severe limitations on their activities.

It would be unreasonable to prioritize pre-COVID-19 deadlines over the right to vote in this extraordinary circumstance.

**IV.    The Requested Relief Is in the Public Interest Because It Will Help Protect the Health and Safety of Florida Residents, Assist the State in Complying with CDC Guidance During the COVID-19 Pandemic, Help Prevent the Spread of a Novel and Deadly Virus, and Safeguard Eligible Florida Voters' Fundamental Right to Vote.**

Defendants cannot provide any colorable justification for their refusal, in light of the COVID-19 pandemic, to extend the vote-by-mail request and return deadlines or to expand the mechanisms for delivering vote-by-mail ballots. Plaintiffs' requested relief is in the public interest because it will help protect the health and safety of Florida residents by preventing mass gatherings which could expose the elderly or infirm to the virus. The requested relief assists the State in complying with CDC guidance during the COVID-19 pandemic, helps prevent the spread of a novel, deadly virus from overwhelming the State of Florida's health system, and safeguards eligible Florida voters' fundamental right to vote. By every measure, the requested relief is in the public interest. These voters have already had their lives indefinitely turned upside down, and they should not have to risk their wellbeing and potentially their lives to cast a ballot. Ensuring that they can exercise their constitutional right to vote thus promotes the public interest.

## CONCLUSION

For the foregoing reasons, this Court should enter a Temporary Restraining Order awarding the requested relief.

Dated: March 16, 2020                    Respectfully submitted,

                                          By: */s/ Kira Romero-Craft*
                                                  Kira Romero-Craft


CHIRAAG BAINS*                            JUDITH A. BROWNE DIANIS*
Dēmos                                     GILDA DANIELS*
740 6th Street NW, 2nd Floor              JESS UNGER*
Washington, DC 20001                      SHARION SCOTT*
(202) 864-2746                            Advancement Project National Office
cbains@demos.org                          1220 L Street N.W., Suite 850
                                          Washington, D.C. 20005
STUART NAIFEH*                            (202) 728-9557
KATHRYN C. SADASIVAN*                     jbrowne@advancementproject.org
MIRANDO GALINDO*                          gdaniels@advancementproject.org
EMERSON GORDON-MARVIN*                    junger@advancementproject.org
Dēmos                                     sscott@advancementproject.org
80 Broad St, 4th Floor
New York, NY 10004                        KIRA ROMERO-CRAFT
(212) 485-6055                            (FL SBN 49927)
snaifeh@demos.org                         LatinoJustice PRLDEF
ksadasivan@demos.org                      523 West Colonial Drive
mgalindo@demos.org                        Orlando, Florida 32804
egordonmarvin@demos.org                   (321) 418-6354
                                          kromero@latinojustice.org

                                          FRANCISCA FAJANA*
                                          JACKSON CHIN*
                                          LatinoJustice PRLDEF
                                          475 Riverside Drive, Suite 1901
                                          New York, NY 10115
                                          (212) 739-7572
                                          ffajana@latinojustice.org
                                          jchin@latinojustice.org

                                          *Attorneys for Plaintiffs*

                                          *Application for admission pro hac vice
                                          forthcoming*

21

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Northern District of Florida Local Rule 7.1(F), I certify that, according to the word count of the word processing system used to prepare this document, the foregoing memorandum contains 5,571 words.

*/s/ Kira Romero-Craft*
Kira Romero-Craft

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 16, 2020, a true and correct copy of the

foregoing motion and memorandum has been furnished to the following parties via

electronic mail:

> Nicholas Allen Primrose
> Executive Office of the Governor
> 400 S Monroe Street, # 209
> Tallahassee, FL 32399-6536
> (850) 717-9310
> nicholas.primrose@eog.myflorida.com
> *Attorney for the Governor*
>
> Brad McVay
> General Counsel
> Florida Department of State
> R.A. Gray Building
> 500 S. Bronough Street
> Tallahassee, FL 32399-0250
> (850) 245-6511
> Brad.McVay@dos.myflorida.com
> *Attorney for the Secretary of State*
>
> Amit Agarwal,
> Solicitor General
> Office of the Attorney General
> PL-01 The Capitol
> Tallahassee, FL 32399-1050
> amit.agarwal@myfloridalegal.com
> *Attorney for Defendant Elections Canvassing Commission*

> */s/Kira Romero-Craft*
> Kira Romero-Craft